THE BELLEVILLE NAIL COMPANY

*v.*

THE PEOPLE *ex rel.* H. G. Weber, Collector, Etc.

| 98 | 399 |
| 135 | 135 |
| 98 | 399 |
| 141 | 225 |
| 98 | 399 |
| 169 | 551 |
| 98 | 399 |
| 204 | 2476 |

*Filed at Mt. Vernon November 11, 1880 — Rehearing denied May Term, 1881.*

1. TAXES—*on personalty—when lien on real estate as against purchaser.* A tax on personal property does not become a lien upon the real estate of the owner until the collector, on failure to collect the same, charges the same on such real estate in his application for judgment, and notice,—and after such real estate is conveyed by the owner his personal tax can not be charged against the land in the hands of his grantee, even though the grantee had notice at the time of his purchase of the existence of an unpaid personal tax.

2. SAME—*judgment for—when conclusive.* A judgment against a lot for taxes is not conclusive upon the owner, of the liability of the lot for the taxes, unless he appears and resists the application. If he does so, and contests the tax, the judgment will conclude him.

3. SAME—*interest, penalties and costs on back taxes.* Lands and lots are liable to back taxes, interest, penalty and costs, under section 129 of the Revenue law, when they have been forfeited to the State, whether such forfeiture was in due form or not.

4. SAME—*on franchise and capital stock of corporation, a personal tax.* The capital stock and franchise of a corporation are recognized by the statute as to be listed, valued and taxed as personal property, and the tax thereon becomes no lien on the real estate of the corporation until made so by the collector taking the proper steps to make it such.

WRIT OF ERROR to the County Court of St. Clair county; the Hon. FREDERICK H. PIEPER, Judge, presiding.

Mr. JAMES M. DILL, Mr. A. S. WILDERMAN, and Mr. J. N. PERRIN, for the plaintiff in error.

Mr. GEO. W. BROCKHAUS, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

At the July term, 1879, of the county court of St. Clair county, the county collector of that county made application for judgment for the sale of sundry lots and lands for the respective amounts of taxes, special assessments, interest, penalties and costs appearing as delinquent against the lots and lands. The Belleville Nail Company appeared and filed objections. The court sustained some of the objections, and rendered judgment against the lots and lands for the residue of the amount of taxes, etc., returned as delinquent, as to which the objections were not sustained, and the Belleville Nail Company brings this writ of error.

In the amount for which the judgment was rendered against lot 166, in a certain addition to Belleville, were included the sum of $1241.56, the personal property tax of 1875, on the tangible property of the Belleville Nail Mill Company, and the sum of $1684.64, the tax of 1875, on the capital stock of that company. The Belleville Nail Mill Company and the Belleville Nail Company are different corporations.

It appears, that on April 19, 1876, Edward Abend purchased said lot 166, at a trustee's sale thereof, made to him by D. H. Murray, trustee, under a deed of trust thereof to the latter from the Belleville Nail Mill Company, executed March 1, 1873; which deed from Murray to Abend was not recorded until March 8, 1877. On May 19, 1876, Abend sold and conveyed the lot to the Belleville Nail Company, by

deed recorded May 20, 1876, and the latter company took actual possession of the lot immediately after the execution of the deed of Abend to the company, and has since remained in the possession of the same.

The personal property tax of the Belleville Nail Mill Company was not a lien upon this lot 166 of that company, at least until the tax was charged against it by the action of the county collector; and the record discloses no action of the county collector in that regard until August 15, 1876, when, in the list of delinquent lands and lots returned by him to the county court, there appears the following, as against lot 166: "Personal property tax, including capital stock, which can not be made out of the personal property, and is charged on lot No. 166." This was not until some time after the purchase of lot 166 by the Belleville Nail Company. The collector's books for the taxes of 1875 came to the collector's hands about January 1, 1876.

Section 255 of the Revenue act declares: "Personal property shall be liable for taxes levied on real property, and real property shall be liable for taxes levied on personal property; but the tax on personal property shall not be charged against real property, except in cases of removals, or where said tax can not be made out of the personal property."

Section 253 provides: "The taxes assessed upon real property shall be a lien thereon, from and including the first day of May in the year in which they are levied, until the same are paid."

By section 254: "The taxes assessed upon personal property shall be a lien upon the personal property of the person assessed, from and after the time the tax books are received by the collector."

Section 183 provides: "When it becomes necessary to charge the tax on personal property against real property, the county collector shall select for that purpose some particular

26—98 Ill.

tract or lots of real property owned by the person owing such personal property tax; and in his advertisement for judgment and sale shall designate the particular tract or lots of real property against which such personal property tax is charged, and in the list filed for judgment the same facts shall be shown, and the court shall take cognizance thereof, and give judgment against such tract or lots of real property for such personal property tax."

Said section 255, so far as cited, is the same as section 14 of the Revenue act of 1853, which, as to this matter of lien, received a construction by this court in *Schaeffer* v. *The People*, 60 Ill. 179, where we said: "By no fair construction of that section does it create any lien on the real property for the tax levied on the personal property of the owner that can prevail against the rights of the subsequent purchaser;" and further on, "we are of opinion that no such lien is created by the 14th section of the act of 1853 as can be enforced against a subsequent purchaser without notice."

There is some evidence in the case to the effect that the Belleville Nail Company knew that there were taxes due on the personal property of the Belleville Nail Mill Company which they believed were illegal, and that such tax should have been made out of personal property. This is insufficient evidence to show a charge of the personal property tax on real estate, so as to make it a lien thereon, and mere notice of the existence of an unpaid personal property tax against a grantor of real estate would not affect the grantee so as to charge the land in his hands with the payment of the tax, unless previous to his purchase the personal property tax had been made a charge on such real estate.

As before observed, it does not appear that any step was taken to charge this personal property tax of the Belleville Nail Mill Company against this lot 166, until some time after the sale of the lot by that company and its purchase by the Belleville Nail Company. At the time, then, this latter com-

pany purchased the lot, these personal property taxes were not a lien upon the lot, nor were the taxes in any manner chargeable upon the lot, and the lot in its hands is not liable for the payment of those taxes.

It appears, that at the August term, 1876, of the county court, judgment was rendered against lot 166 for the personal property taxes here in question, and also a like judgment at the August term, 1878. Without noticing the defects which are claimed to exist in these judgments, we do not hold them to be conclusive against the Belleville Nail Company of the liability of the lot for the payment of these taxes. The company did not appear and become a party in the proceedings in which those judgments were rendered, and make objections against their rendition; and we regard them as of no binding force against this company, and that it is open to the company to show here that the lot was not liable for the payment of said taxes, although such judgments were rendered. In *Graceland Cem. Co.* v. *The People*, 92 Ill. 619, we held, where the owner of land appeared in such a proceeding, filed objections and contested the liability of his land for the tax claimed, that the judgment against the land for the tax was conclusive against him of the liability of the land for the tax, in a collateral proceeding. But it is only in the case of such appearance and defence that we regard the judgment as conclusive.

The statute, in declaring, in section 224, that the tax deed made upon a sale under a judgment for taxes, shall be *prima facie* evidence of certain enumerated things which are requisite to a correct judgment, shows the intention of the statute that the judgment was not to have the same effect of conclusiveness which is given, collaterally, to ordinary judgments rendered by default, where personal service has been had. There is in these cases no personal service, but only publication of notice in a newspaper that application will be made for judgment.

There are cross-errors assigned by appellee.

There were back taxes proper against the lands and lots, and it is complained that the court sustained the objections made as to all penalties, interest and costs on taxes of preceding years.

By section 129 of the Revenue act it is provided: "In all cases where any real property has heretofore been or may hereafter be forfeited to the State for taxes, it shall be the duty of the clerk, when he is making up the amount of tax due on such real property for the current year, to add the amount of back tax, interest, penalty and printer's fees remaining due on such real property, with one year's interest, at ten per cent, on the amount of tax due, to the tax of the current year," etc.

Section 229 provides: "The amount due on lands and lots previously forfeited to the State, and remaining unpaid on the first day of November, shall be added to the tax of the current year, * * * and the amount * * * shall be placed on the tax books, collected and paid over in like manner as other taxes."

Section 277 is: "If the tax or assessment on property liable to taxation is prevented from being collected for any year or years, by reason of any erroneous proceeding or other cause, the amount of such tax or assessment which such property should have paid may be added to the tax on such property for any subsequent year, in separate columns, designating the year or years."

Real property is forfeited to the State, when, at any regular tax sale under the act, the collector shall offer the property for sale, and it shall not be sold for want of bidders,—then it shall, by provision of the statute, be forfeited to the State.

There are evidently two cases contemplated here: one, under sections 129 and 229, where the property has been forfeited to the State, when interest, penalty, etc., are to be added to the back tax; the other, under section 277, where there has been no forfeiture to the State, in which case the

back tax simply is to be added to the tax of a subsequent year.

There is an admission in the case by the parties that there was no certified or other order of sale delivered to the collector prior to the sales of land for non-payment of taxes, for the years 1874, 1875, 1876 and 1877, respectively. It is to be taken, then, that there never was any precept or process for the sale issued upon the judgments, and that the collector made the sales for the years for which the back taxes are charged and claimed to have been forfeited to the State, without such precept or process.

Section 19 of the Revenue act contemplates that there shall be a process for the sale, and prescribes what the process shall be. It is contended that such a sale, or offer of land for sale, without process, would be a nullity, and so would not be one where there could be the forfeiture of the property to the State contemplated by the statute; and hence, that sections 129 and 229, relating to lands forfeited to the State for taxes, do not apply here, but that the section applying to this case is 277, where there is to be no addition to the back tax of penalty, interest and printer's fees.

A majority of the court hold that it was sufficient that there had been, in fact, a forfeiture of the lands and lots to the State, whether in due form or not. See *People* v. *Smith*, 94 Ill. 226. This assignment of cross-error is sustained.

It is also complained by appellee, that the court below sustained the objection as to the capital stock tax against the Belleville Nail Mill Company of 1874, amounting to $997.47. It is said this is a tax on the franchise and the real and personal property of the corporation, and should be held as being one against the lot, and so a lien upon it. It is sufficient to say, that the capital stock and franchise of a corporation are recognized by the statute as to be listed, valued and taxed

as personal property. Revised Statutes 1874, ch. 120, §§ 3, 7, 34. · There was no error in this regard.

The judgment as respects the lots and lands as to which objections were filed by the Belleville Nail Company, is reversed and the cause remanded.

*Judgment reversed.*